MINNIE E. GIBSON, Appellee, v. DAVID WILD, Administrator of the Estate of Mary A. Johnson, Appellant.

Insane person: CARE AND ATTENDANCE: GUARDIAN'S CLAIM: PREVIOUS ALLOWANCE. Where the guardian of a person of unsound mind secured a monthly allowance for the care of her ward, on a showing that the ward was unable to attend to her personal wants

but required the guardian's constant care and attention, she cannot, after the death of the ward, recover from the estate additional compensation for the same service.

*Appeal from Linn District Court.*— HON. W. N. TREICH-LER, Judge.

SATURDAY, MAY 7, 1904.

THE opinion states the case.— *Reversed.*

*Redmond & Stewart,* for appellant.

*Preston, Grimm & Moffitt,* for appellee.

WEAVER, J.— Joseph Johnson and Mary, his wife, lived for many years upon a farm near Springville, Iowa. The plaintiff was taken into the family when about six years old, and lived there until she was twenty-one years old, or about eight years before the death of said Johnson and wife. In the year 1898 Mr. and Mrs. Johnson removed from the farm to Marion, where the husband died January 20, 1899. On July 4, 1900, Mrs. Johnson also died. She had been of unsound mind for many years, but not to such a degree as to preclude her remaining at home in the care of her friends. During a period of some years on the farm and in Marion, one Jennie Armstrong, a maiden lady, lived with the Johnsons, doing the housework and caring for the afflicted woman, until she was superseded by the plaintiff, as hereinafter noted. Shortly before the death of Mr. Johnson, one Elsberry had been appointed guardian of the property of Mrs. Johnson, but not of her person. After the death of the husband, the plaintiff presented a claim against his estate for services alleged to have been rendered when she lived in the family, which claim was allowed in the sum of $550. In July, 1899, the plaintiff, acting it would seem, on her own motion, procured herself to be appointed guardian of the person of Mrs. Johnson, and, armed with the authority thus conferred, at once took

possession of the home and person of her ward, and discharged Miss Armstrong. With her family, she made her home in the house of Mrs. Johnson without payment of rent. In January, 1900, plaintiff applied to the district court, stating the mental and physical condition of Mrs. Johnson — describing her as being mentally unsound, and mentally and physically unfit and unable to care for her person in any way, and requiring the constant attention and care of the plaintiff — and asked to be allowed compensation therefor at the rate of $50 per month. This application was granted, and the administrator of the estate was ordered to pay plaintiff for such services at the rates thus demanded. From the appointment of plaintiff as guardian until the death of Mrs. Johnson, one year elapsed, and she admits having received under the allowance of the court the full sum of $50 per month for that period, except a balance of $127. She now presents a claim against the estate of Mrs. Johnson, one item of which is for this unpaid remainder of the allowance $127. She further alleges that from April 17, 1900, to the date of her death, Mrs. Johnson was very sick of dangerous diseases and physical injuries, during which time plaintiff devoted seventy-nine days and nights to the sick woman's care, for which she demands additional compensation in the sum of $395. To this she adds an item for assistance employed by her in and about the house, $135.75. Also an item for bedding injured or destroyed, $27.83. She also asks to be allowed the further sum of $120 for assistance rendered by her husband in caring for said ward, the claim for which has been assigned to her. The matter was tried to a jury, and verdict returned in plaintiff's favor for $625. The administrator appeals.

II. The defendant asked the court to instruct the jury as follows: " (2) You are instructed that the claimant in this case having applied to the court in January, 1900, for an allowance and order on the guardian of Mrs. Johnson to pay her fifty dollars per month for care, maintenance, support, and clothing, and having obtained such order, to con-

tinue until the further order of the court, and having received and accepted said allowance according to said order, she cannot recover any sum or amount against the administrator in this case for the work by her performed in fulfillment of the terms and condition of said order." This instruction was refused, and error is assigned upon the ruling. In our judgment, the request should have been granted. Plaintiff placed her own estimate on the value of her services, and obtained an order that the same should continue till otherwise ordered. This order was made after she had several months' experience in the charge of said ward, and her demand was granted upon the representation that said ward was entirely helpless, and required the constant care and attention of her guardian. Those services she then claimed were worth $50 per month, and we see no reason why she is not bound by the arrangement thus made. So far as appears in the record, she never made further application to the court during the lifetime of her ward, but continued to render the agreed service under the terms of said order of allowance during the remainder of the ward's life. Such being the case, she has no legal right to demand and enforce payment of an increased compensation, but the allowance upon which she undertook to render the services is the measure of their recoverable value.

It is said by counsel that this allowance was for the support, care, and maintenance of the ward in her ordinary condition, and that plaintiff's claim in excess of the $127 is for extraordinary services. But plaintiff demanded and received the allowance on the claim that her ward was wholly unable to care for herself, " helpless and unable to attend to her personal wants in any way, and required the constant attention of plaintiff to care for and keep her clean, and was wholly unable to help herself in any way," and it was for the care and maintenance of a person in this condition that the allowance was asked, made, and accepted. According to the showing then made, plaintiff was giving and required to give the ward her " constant " service, and it is difficult to understand how she

was able in the short period of two and one-half months to per-
form extraordinary services in addition to a service already
" constant " to the amount of $395, and at the same time re-
quire the assistance of others to the amount of nearly $300
more.    Indeed, it is hard to resist the conclusion that the
plaintiff's claim is very greatly exaggerated, and that no little
ingenuity has been exercised to swell the list of items for
which compensation is claimed.    Counsel for appellee say
(and the suggestion sheds considerable light upon the situa-
tion) that plaintiff had been " led to believe that she had been
adopted as the heir of the Johnsons, and justly felt the money
belonged to her, as there were no other direct heirs."    The
same spirit is shown in a letter, which is in evidence, written
by plaintiff to the administrator in reference to her claim,
where, among other things, she says: " You was quick
enough to pay that old maid.    Now when I come in for my
bill after doing all the dirty work you put me off.    You know
David Wild that money belongs to me whether I work for it
or not."    It may well be that plaintiff honestly believes she
has ground for feeling she has been unjustly denied the right
to inherit the estate as an adopted child, and, so far as we
know, there may be justice in her complaint; but the court
should not be asked to cure the wrong, if one was done, by
allowing bills having at best a shadowy foundation in fact.
The plaintiff would seem to be fairly entitled to recover the
$127 still unpaid upon the original allowance, and if, in the
judgment of the trial court, she rendered service or incurred
expense beyond what was fairly contemplated by the terms of
such allowance, it would be within its discretion to allow such
further sum as it believes to be reasonable and just.    The
case of *In re Carter*, 120 Iowa, 215, is not controlling in this
controversy.    There no allowance had been made in advance,
but support had in fact been furnished; and we held it was
not error for the court to approve such reasonable expendi-
ture, and allow the guardian proper credit therefor against

the trust funds in his hands — a proposition that is in no manner negatived by the conclusion we have here reached.

Other questions are argued by counsel, but we think that none except those already mentioned require attention.

For the reasons given, the judgment of the district court is REVERSED.